JOHN M. KEITHLEY, Appellant, v. R. H. PITMAN *et al.*, Defendants ; JOHN PITMAN, Garnishee, Respondent.

St. Louis Court of Appeals, April 15, 1890.

Debtor and Creditor: GARNISHMENT. The sale of property at a fixed valuation which is to be applied towards the payment of the indebtedness of the vendor, the time and manner of such application being left to the discretion of the vendee, does not constitute an enforceable appropriation towards specific .indebtedness, and the vendee is accordingly answerable as garnishee of the vendor

for so much of the purchase money as he has not, prior to the garnishment, either actually paid, or bound himself to pay, on particular indebtedness of the vendor ; nor is an application of such purchase money towards such indebtedness any defense to the garnishment, if it was made after the garnishment.

*Appeal from the St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge,

REVERSED AND REMANDED.

*Ora A. Keithley, C. W. Wilson,* for the appellant.

The balance of $1194.67, which was in John Pitman's hands at the time the garnishment was served on him, was subject to garnishment by D. K. Pitman's creditors. *Ridge v. Olmstead,* 73 Mo. 578 ; *Nicholson v. Walker,* 25 Mo. App. 368–377 ; *Briggs v. Block,* 18 Mo. 281–283; *Sproule v. Agnew,* 7 Mo. 62 ; *Corey v. Powers,* 18 Vt. 587 ; *McGuire v. Wilkinson,* 72 Mo. 202 ; *Casebolt v. Donalson,* 67 Mo. 308. The purchase price of the land was money due the execution debtor, D. K. Pitman, and he could countermand his orders in relation to it, at any time before it was paid out by the garnishee. *Ridge v. Olmstead,* 73 Mo. 580 ; *Nicholson v. Walker,* 25 Mo. App. 375 ; *Henry County v. Allen,* 50 Mo. 233; Story on Agency [ 9 Ed.] sec. 463. There was no novation of the debt or substitution of creditors. This can only be done by the assent of the creditor. *Vanderline v. Smith,* 18 Mo. App. 60 ; *Lee v. Porter,* 18 Mo. App. 378. It having been shown that the money of the execution debtor was in the hands of the garnishee, the burden rests upon the garnishee to show that the fund was charged with a trust. *Frank v. Frank,* 6 Mo. App. 588. The garnishee had no right to pay out any of the funds in his hands after he was served with the garnishment, and the fact that he did so does not relieve him of accountability to the plaintiff. 8 Am. &

Eng. Ency. of Law, pp. 1200, 1201, and cases cited; *McGarry v. Coal Co.*, 93 Mo. 240–241, and authorities cited.

*T. F. McDearmon*, for the respondent.

By the agreement between the garnishee and D. K. Pitman the relation of debtor and creditor was created between the garnishee and the creditors of D. K. Pitman, and said creditors could have at any time sued and put into judgment their claims against the said John Pitman. *Holt v. Dollarhide*, 61 Mo. 433; *Besshears v. Rowe*, 46 Mo. 501; *Schuster v. Railroad*, 60 Mo. 290; *Rodgers v. Peak*, 51 Mo. 446; *Brown to use v. Brown*, 47 Mo. 130; *Rodgers v. Gossnell*, 51 Mo. 466; *Cress v. Blodgett*, 64 Mo. 449; *Bank of Mo. v. Benoist*, 10 Mo. 519; *Robbins v. Ayers*, 10 Mo. 538; *Beardslee v. Morgner*, 4 Mo. App 139; s. c., 73 Mo. 22; *Fitzgerald v. Barker*, 4 Mo. App. 105. These authorities establish the right of the creditors of D. K. Pitman to sue John Pitman on the aforesaid agreement. This right to sue could not exist in D. K. Pitman and his creditors at the same time, for the same debt. In the garnishment process the plaintiff stands in the shoes of his debtor and has no greater rights against the garnishee. *McPherson v. Railroad*, 66 Mo. 103; *Weil v. Tyler*, 38 Mo. 545; *Funkhauser v. Earland*, 3 Mo. App. 602. In order that an indebtedness may be liable to garnishment, it must be shown to be absolutely due as a money demand unaffected by liens or prior incumbrances or conditions of contract. *Scales v. Hotel Co.*, 37 Mo. 520; *Huge v. Fruin*, 18 Mo. App. 139; *Reinhardt v. Soap Co.*, 33 Mo. App. 24.

ROMBAUER, P. J., delivered the opinion of the court.

This is a garnishment upon execution. The plaintiff's denial of the garnishee's answer charges that, on May 10, 1887, D. K. Pitman, one of the defendants in

Keithley v. Pitman.

the execution, sold to the garnishee certain land for the sum of twelve thousand dollars, and that a large amount of the purchase money, to-wit, five thousand dollars, had not been paid by the garnishee at the date of the garnishment. The garnishee's reply consists of a general denial.

The garnishee is the son of one of the defendants in the execution, and it stands admitted that the defendant sold to him the land mentioned in the denial, at the date therein stated, for twelve thousand dollars. The transaction is thus described by the father: "I told John that, if he had the money and wanted to buy the land at twelve thousand dollars, I would sell to him, but that, if his object was to buy simply for the purpose of relieving me by furnishing money for the payment of my debts I would not sell to him, as I did not wish to incumber or burden himself with debt, just to relieve me. John told me that he really wanted to buy the property, and I then sold to him for twelve thousand dollars, and made him a deed to the property. No part of this purchase money was paid to me, not one cent of it. As I have already said, I was considerably in debt, and, as I am getting quite old, I just directed him to apply this money to the payment of my debts as far as it would go. The price paid for the land was twelve thousand dollars, and he was to pay my debts so far as it would go. I don't know how much has been paid out by him. He has paid a large part of it; he told me some time ago, that he had paid ninety-five hundred dollars of it."

On cross-examination the witness said: "The contract price of the land was twelve thousand dollars. There was no arrangement or understanding that he was to prorate this money among my creditors, or pay a per cent. on all their claims against me. I only directed that he should pay my individual debts in full. I only owed one individual debt, and that was a debt of about

twelve hundred dollars, that I owed to my grandson, W. W. Pitman. I requested that that debt be paid in full. All the other claims against me were security debts, debts which I owed as security for my son, R. H. Pitman ( his co-defendant herein ). As to those debts, I left to my son John's discretion to pay them as he pleased. He was to pay such debts at such times as he saw fit. He reported to me that he had paid out about ninety-five hundred dollars.''

The garnishee himself testified on behalf of plaintiff: '' I am the garnishee in this case, and the son of the defendant, D. K. Pitman. I bought the tract of land from my father, D. K. Pitman, for the sum of twelve thousand dollars. I paid no part of the purchase money over to my father. He was considerably in debt at the time of the purchase, and gave me a list of his debts, and directed me to apply the twelve thousand dollars to the payment of his debts, as far as it would go. He did not know the exact amount of his debts, from the fact that he did not know what amount of interest had accumulated on them.'' And again : '' There was no understanding that the money would be applied *pro rata*, to all the debts mentioned. There was no direction as to how, or to what debt, I should apply the money, except that I was to pay his individual debt to W. W. Pitman and wife, about twelve hundred dollars. No time was fixed as to when I should make the payments. The matter was left to my discretion.''

R. H. Pitman, one of the defendants in the execution, testified for plaintiff : '' I was present at the time of the sale of the land by my father to my brother John, and heard what passed. The land was sold for twelve thousand dollars, and my brother was to apply the money to the payment of my father's debts. The debts were nearly all debts that my father owed as security for me. A list of the debts was made out, and included the debt to Mr. Keithley.''

It further appeared by the garnishee's own evidence, that he had paid, up to the date of the garnishment, eighteen hundred and five dollars and thirty-three cents of his father's debts, leaving unexpended, at that date, eleven hundred and ninety-four dollars and sixty-seven cents of the purchase money, and that he paid, subsequent to the date of the garnishment, ten hundred and nineteen dollars of such debts. The claim of plaintiff herein is upon a judgment for fourteen hundred and twenty-three dollars and ninety-two cents remaining wholly unpaid.

The good faith of the sale by D. K. Pitman to his son, the garnishee herein, is nowhere questioned, and the only question for decision is, whether, under the conceded facts, by such sale the relation of debtor and creditor was established between the vendee and vendor, or between the vendee and the vendor's creditors.

The trial court rendered a judgment for the garnishee, and, in so doing, necessarily held that the latter of these propositions was the correct conclusion of law upon the admitted facts. Whether this ruling was error, is the only question presented for our consideration upon this appeal.

It is not pretended that this is a question of novation. The creditors of D. K. Pitman did at no time agree to a substitution of John Pitman as their debtor in lieu of his father. Notwithstanding the sale, their cause of action against D. K. Pitman remained intact. That proposition is self-evident. It is held in this state that a promise made by A. to B. to pay B.'s debt to C. is not within the statute of frauds, and that C. may maintain an action thereon against A. *Besshears v. Rowe*, 46 Mo. 501; *Brown to use v. Brown*, 47 Mo. 130, 132; *Holt v. Dollarhide*, 61 Mo. 433; *Cress v. Blodgett*, 64 Mo. 449. If, therefore, in the present case the obligation assumed by the son, to pay certain creditors of his father's, would have become absolute by the transaction above stated, it might well be said that the

son would have ceased to be a creditor of his father in any other sense than that, which still left in his father a right for his own protection to insist upon the fulfillment of these obligations. The money debt in such event could not be due at the same time both to the father and the father's creditors. But we see nothing in the facts of this case to bring it within the above principle. The testimony of all the witnesses concurs that the consideration of the sale was not a payment of the father's creditors in full, for which purpose the consideration was insufficient, nor the payment of any particular creditors in full, or *pro rata*, which such creditors could have enforced by suits against the son, but a payment at the discretion of the son as to the time and amount, which neither the father nor the creditors could have specifically enforced. At the same time the testimony of all the witnesses concurs that the consideration of the sale was twelve thousand dollars in money, and that the sale was one in absolute good faith and in no sense in fraud of creditors. It is our duty to uphold this transaction as one made in good faith, if it can be thus upheld. For the purpose of so doing, we must, conclude from all the evidence that the son continued indebted to his father, until he had expended the entire sum of twelve thousand dollars for the payment of his debts, and that such indebtedness was decreased only, as the payment of such debts progressed.

It is evident that we must either treat this conveyance as one not based upon a valuable consideration, and as such fraudulent against existing creditors, and this is opposed to the intentions of the parties as shown by all the evidence, or else we must treat it as a deed upon a money consideration of twelve thousand dollars, which is in harmony with the intention of the parties, and all the evidence. If we treat it as the latter, this consideration was to be paid to some one, and as no one besides the grantor, from whom the counter consideration moved, had a right to exact it, it necessarily

follows that, until it was paid, it remained the property of the grantor.   This is substantially the principle on which the decisions in *Ridge v. Olmstead*, 73 Mo. 578, and in *Nicholson v. Walker*, 25 Mo. App. 368, rest.

If the money was the property of the grantor, the rights of the parties have to be determined by the existing state of things at the date of the garnishment. R. S. 1879, sec. 2520.   At the date of the garnishment, under the conceded facts of this case, the garnishee was indebted to the execution defendant in the sum of eleven hundred and ninety-four dollars and sixty-seven cents, and, as the plaintiff's execution against the defendant is for a larger sum, the garnishee is *prima facie* liable to the plaintiff for the amount of this eleven hundred and ninety-four dollars and sixty-seven cents then in his hands.   The fact that, between that date and the day of trial, he paid of this amount ten hundred and nineteen dollars to other creditors, cannot change his liability, except as hereinafter stated, as the garnishment has the effect of attaching the defendant's moneys and credits in the garnishee's hands.

It necessarily results from this that the judgment of the trial court must be reversed.   We are asked to reverse it with directions to enter judgment against the garnishee for the amount shown to be in his hands at the date of the garnishment, and would do so but for the following facts.   It appears in evidence that, since the garnishment, the garnishee did pay on a judgment of Darius Heald against his grantor the sum of eight hundred and sixty-nine dollars, but it does nowhere appear whether such judgment was rendered against D. K. Pitman prior or subsequent to May 10, 1887, the date of the deed from D. K. Pitman to his son.   If rendered prior to such date, the judgment was a lien upon the land, and the garnishee had a right to discharge it as part of the purchase money, notwithstanding the subsequent garnishment, unless he assumed by the terms of the deed the payment of liens, and agreed to pay

twelve thousand dollars besides. The same result would follow, if the garnishee, by an independent and legally binding obligation towards Heald, had agreed with him prior to the garnishment to discharge the judgment in part consideration of the sale. In order that these facts may be ascertained we will remand the cause to be proceeded with in conformity with this opinion.

.Reversed and remanded. ' All concur.